Argued and submitted December 19, 1986, reversed and remanded May 6, 1987

# GREENFIELD,
*Appellant,*

*v.*

# OLLIKALA et al,
*Respondents.*

(A8507-04429; CA A38895)

736 P2d 599

Charles Z. Edelson, Hillsboro, argued the cause and filed the brief for appellant.

Jan Peter Londahl, Portland, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Plaintiff, a used car dealer, seeks to recover damages for injuries allegedly incurred as a result of statements contained in a letter defendant Schnell sent to United Pacific Insurance Company, the issuer of plaintiff's dealer's bond. Schnell sent the letter while employed as the manager of defendant Victoria Motors, a used car dealership owned by defendants Ollikala. Claims for relief were stated for libel and intentional interference with contractual relations. The trial court granted defendants' ORCP 21 motion to dismiss both claims on the ground that the statements complained of are not capable of defamatory meaning, and plaintiff declined an opportunity to replead. We reverse.

Schnell stated in the letter that, in 1984, plaintiff sold a 1971 Corvair to a buyer who later traded it in on a newer vehicle from Victoria Motors. Victoria Motors subsequently discovered that the Corvair had been stolen and that the duplicate title application that the buyer had received from plaintiff in lieu of the original title was forged. Schnell wrote that, acting on behalf of the buyer, he had contacted plaintiff, who told him that the absence of a clear title was Victoria Motors' problem. Schnell stated that he then contacted an investigator for the Department of Transportation, who told him that plaintiff would be subject to a fine and, because plaintiff was an attorney and knew all the loopholes, suggested that he file a claim against plaintiff's bonding company.

In his amended complaint, plaintiff alleges that Schnell's letter contained these false statements:

"(a) [Plaintiff] refused to cooperate or accept his responsibility to furnish a legitimate title.

"(b) [Plaintiff] said Victoria Motors would be crazy to think that he was going to do anything to resolve the dispute.

"(c) [Plaintiff] refused a Division of Motor Vehicles investigator's request to resolve the title dispute.

"(d) The DMV investigator said that [plaintiff] will be subject to a fine from the State."

Plaintiff alleges that, as a result of the letter, United Pacific Insurance Company canceled his dealer's bond and notified his insurance agent and other bonding companies about the

matter. He alleges special damages of $24,000 and general damages of $50,000.

A statement is capable of defamatory meaning if it

> "would subject [a person] 'to hatred, contempt or ridicule * * * [or] tend to diminish the esteem, respect, goodwill or confidence in which [one] is held, or to excite adverse, derogatory or unpleasant feelings or opinions against [one].'" *Farnsworth v. Hyde,* 266 Or 236, 238, 512 P2d 1003 (1973).

Also,

> "[a] statement falsely ascribing to a person characteristics or conduct that would adversely affect his fitness for his occupation or profession is capable of having a defamatory meaning." *Bock v. Zittenfield,* 66 Or App 97, 100, 672 P2d 1237 (1983), *rev den* 296 Or 486 (1984).

The success of any business depends to a large extent on the goodwill that the business maintains in the community in which it operates. Clearly, a statement that a used car dealer has refused to accept responsibility to furnish a legitimate title could diminish that goodwill because it reflects adversely on the dealer's fitness to operate a dealership. That would, in fact, be borne out if United Pacific Insurance Company cancelled his dealer's bond after receiving the letter. Accordingly, because we necessarily accept plaintiff's allegations as true, *Sager v. McClenden,* 296 Or 33, 35, 672 P2d 697 (1983), we conclude that the trial court erred in holding that all of the statements complained of are incapable of defamatory meaning.

Defendants contend that, even if the statements contained in the letter are capable of a defamatory meaning, the complaint nevertheless fails to state a claim, because the statements are subject to a qualified privilege. A publication is conditionally privileged if the maker reasonably believes that the recipient's knowledge of the defamatory matter is necessary to protect the interests of the maker or the recipient or that it involves a subject of mutual concern to the maker and the recipient. *Wattenburg v. United Medical Lab.,* 269 Or 377, 525 P2d 113 (1974); *Benassi v. Georgia Pacific,* 62 Or App 698, 703, 662 P2d 760, *modified* 63 Or App 672, 667 P2d 532, *rev den* 295 Or 730 (1983); Restatement (Second) Torts, §§ 594-596 (1977). Defendants contend that a qualified privilege

applies here, because the defamatory statements were contained in a letter making a claim on a bond and, therefore, involved a matter of mutual concern to themselves and the bonding company. Thus, they contend, plaintiff was required to allege that the statements were "maliciously made" in order to state a claim.

 A qualified privilege ordinarily must be raised as an affirmative defense. However, if the complaint alleges facts which, if true, establish the privilege, it is subject to a motion to dismiss, unless facts are alleged which show an abuse of the privilege.[1] *See generally Dell v. K.E. McKay's Market,* 273 Or 752, 543 P2d 678 (1975); *Lee v. Nash,* 65 Or App 538, 542, 671 P2d 703 (1983), *rev den* 296 Or 253 (1984).

 Making a claim on a bond is subject to a qualified privilege if the claimant reasonably believed that it was necessary to convey the defamatory matter to the bonding company. *See, e.g., Lull v. Wick Const. Co.,* 614 P2d 321 (Alaska 1980). However, the fact that the defamatory matter was contained in a letter making a claim on a bond does not, in and of itself, establish the privilege as a matter of law. Rather, the claimant must show that he reasonably believed that it was necessary to convey all of the information contained in the letter to the bonding company. Accordingly, because the complaint is silent in that regard, plaintiff was not required to allege facts sufficient to overcome a qualified privilege.

Reversed and remanded.[2]

---

[1] If the privilege is abused, it is lost. In *Schafroth v. Baker,* 276 Or 39, 45, 553 P2d 1046 (1976), quoting Restatement, Torts, § 599, comment *a* at 264 (1938), the court described four ways in which the privilege may be abused:

" '* * * because of the publisher's lack of belief or reasonable grounds for belief in the truth of the defamatory matter (see §§ 600-602); because the defamatory matter is published for some purpose other than that for which the particular privilege is given (see § 603); because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege (see § 604); or because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged (see § 605).' "

[2] Defendants' sole challenge to plaintiff's claim for intentionally interference with contractual relations is dependent on plaintiff's having pled a valid claim for defamation. Because we have concluded that plaintiff has stated such a claim, our decision to remand necessarily applies to both of plaintiff's claims.